IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JOSEPH L. HALL,** an individual**; VICTOR PIERCE,** an individual**; PATRICK D. JOHNSON, SR.,** an individual**;** and **PHYLLIS HARRIS,** an individual,

        Plaintiffs,

    v.

**DAIMLER TRUCKING NORTH AMERICA,** a Delaware limited liability company; **MONIKA BUMPERS**, an individual; **FRANK BETTS**, an individual; **RYAN HOLTCAMP**, an individual; **DAVID CARSON**, an individual; and **RACHELLE WRIGHT**, an individual ,

        Defendants.

Case No.3:15-cv-00506-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiffs Joseph Hall, Victor Pierce, Patrick Johnson, and Phyllis Harris brought this

action against Defendant Daimler Trucks North America LLC ("DTNA") for employment

discrimination under ORS 659A.030, and against Defendants DTNA, Monika Bumbers, Frank

Betts, Ryan Holtkamp, David Carson, and Rachelle Wright for aiding and abetting in race

discrimination. The original action was filed on February 24, 2015, in the Multnomah County

Circuit Court of Oregon, Case No. 15CV04279. On March 26, 2015, Defendants removed this

1—OPINION AND ORDER

lawsuit to this Court, pursuant to 28 U.S.C §§ 1331, 1441 and 1446. (Def.'s Notice of Removal [1]). On April 30, 2015, Plaintiffs jointly filed a motion to remand this lawsuit back to Multnomah County Circuit Court. (Pl.'s Mot. To Remand [8]). For the reasons explained below, I GRANT this motion for Plaintiffs Mr. Johnson, Mr. Pierce, and Ms. Harris's state-law claims, and DENY this motion for Mr. Hall's federal and state-law claims.

## BACKGROUND

Plaintiffs, who are African-American, jointly allege that they were the victims of a hostile work environment based on their race. Plaintiffs allege that a group of white co-workers perpetrated "racially charged incidents, racially insulting and derogatory language and graffiti, including threats of violence, showing 'hangman's nooses' in the work area and parking lots, and stuffing chicken bones in a co-worker's locker." (Compl., ¶¶ 14, 24, 31). Plaintiffs additionally allege that derogatory names were often used in the workplace, that intimidating conduct was directed at them (Aldisert Decl. [2] at 3–12), and that coworkers would urinate and smear feces in areas where African-American workers had to clean up. (Aldisert Decl., ¶ 14); (Hall Decl. [10] at 2).

Mr. Hall is a member of the Service Employees International Union Local #49 ("SEIU"). (Nancarrow Decl., ¶ 3–4). Mr. Pierce is a member of the International Association of Machinists and Aerospace Workers ("IAM"); (Nancarrow Decl., ¶¶ 5, 6). Mr. Johnson is a member of the Teamsters Local Union No. 305 ("Teamsters"); (Nancarrow Decl., ¶ 8). At all times during Mr. Hall's, Mr. Pierce's, and Mr. Johnson's employment, the terms and conditions of their employment were governed by Collective Bargaining Agreements ("CBAs") between their respective unions and DTNA. Ms. Harris is not a member of any union, and her employment is not subject to any CBA. (Harris Decl. [13] at 2).

2—OPINION AND ORDER

On May 31, 2013, Mr. Hall was diagnosed with glaucoma and cataracts in both eyes. He

left work, had surgery, and returned to work in early December 2013. (Hall Decl. [10] at 3–4).

Upon returning, Mr. Hall alleges that he was told by human resources staff that he would lose his

health insurance benefits if he did not retire. Based on that alleged statement, Mr. Hall claims

that he chose to retire in early December 2013 and that he was the victim of various forms of

employment discrimination based on his race. (Compl., ¶ 18); (Hall Decl. [10] at 4). Mr. Johnson

worked at DTNA from December 2011, until June 2014, and alleges that he experienced various

forms of employment discrimination as well. (Johnson Decl. [12] at 2). Mr. Pierce has worked at

DTNA since 1994, and alleges that he also experienced various forms employment

discrimination. (Pierce Decl. [11] at 2–3). Ms. Harris has worked at DTNA since July 2011, and

alleges that she also experienced various forms of employment discrimination. (Harris Decl. [13]

at 2–3).

## DISCUSSION

This action was originally brought by Plaintiffs in Multnomah County Circuit Court of

Oregon and subsequently removed by Defendants to this Court. Plaintiffs have brought a motion

to remand this case back to state court. (Pl.'s Mot. to Remand [8]). At issue before this Court is

whether federal law is implicated in Plaintiffs' complaint. Defendants claim two federal statutes

are implicated that establish a federal question and properly place subject matter jurisdiction in

this Court. These are the Labor Management Relations Act ("LMRA") and the Employment

Retirement Income Security Act ("ERISA"). 29 U.S.C. § 185(a); 29 U.S.C. § 1132(a); (Def.'s

Resp. to Pl.'s Mot. to Remand [14] at 11, 20). The sole issue is whether this case triggers the

"preemptive force" of those federal statutes and therefore creates a federal question. *Balcorta v.

Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000) (citing *Metro. Life Ins.*

*Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In this case, the LMRA fails to create a federal question

for the same reason that the ERISA succeeds—a specific right at issue in this action was created

by the ERISA and not by the LMRA.

**I.        Section 301 of The Labor Management Relations Act Does Not Preempt Plaintiffs' Claims.**

Defendants removed this action primarily on the ground that Plaintiffs' claims are

preempted by § 301 of the LMRA, which provides, in relevant part that "Suits for violations of

contracts between an employer and a labor organization . . . may be brought in any district court

of the United States having jurisdiction of the parties, without respect to the amount in

controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Section 301

has a broad application which "preempts state law claims that are based directly on rights created

by a collective bargaining agreement, and also preempts claims that are substantially dependent

on an interpretation of a collective bargaining agreement." *Aguilera v. Pirelli Armstrong Tire*

*Corp.*, 223 F.3d 1010, 1014 (9th Cir. 2000).  For reasons discussed below, § 301 does not

preempt Plaintiffs' claims in this case because those claims are not based on rights created by the

CBAs, nor are they substantially dependent upon the CBAs.

**A. *Plaintiffs' Well-Pleaded Complaint is not based on Rights Created by The CBAs.***

Federal question jurisdiction turns on the "well-pleaded complaint" rule, which provides

that federal jurisdiction only exists when a federal question is presented on the face of the

plaintiff's properly pleaded complaint. *Audette v. Int'l Longshoremen's and Warehouseman's*

*Union*, 195 F.3d 1107, 1111 (9th Cir. 1999). Plaintiffs note that no such federal issue is

implicated on the face of their well-pleaded complaint. (Pl.'s Brief in Supp. of Mot. to Remand

[9] at 4).

4—OPINION AND ORDER

In their response, Defendants contend that § 301 of the LMRA preempts Plaintiffs' state common law claim and turns it into a federal claim. (Def.'s Resp. to Pl.'s Mot. to Remand [14] at 11). Defendants highlight the strength of § 301's preemptive power, noting it is one of only three instances wherein the Supreme Court has reserved "complete jurisdiction" to federal court. *Retail Prod. Trust v. United Bhd. of Carpenters & Joiners of Am.,* 768 F.3d 938, 948. "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 642 (9th Cir. 1989)(internal citation omitted)(internal quotations omitted).

Section 301 does not, however, apply to the claims brought by Plaintiffs here. This is because the Plaintiffs in this case have not brought an action for violation of contract (namely, the CBAs), and therefore § 301's preemptive power has nothing to displace. Section 301 applies to "[s]uits for violations of contracts between an employer and a labor organization . . . or between any such labor organizations." 29 U.S.C. § 185(a). Plaintiffs make it clear in their reply brief that "this is not a case for violation of any CBA" nor is it a "suit between an employer and a labor organization," but rather it is a suit for a discriminatory work environment. (Pl.'s Reply on Mot. to Remand [16] at 5); (Aldisert Decl., [2]). As such, the LMRA is not directly implicated.

**B. *Plaintiffs' claims do not substantially depend on the CBAs.***

Section 301 also preempts state law claims that are "substantially dependent on analysis of a collective bargaining agreement." *Int'l Bhd. Of Elec. Workers, AFL-CIO v. Hechler,* 481 U.S. 851, 859, n. 3 (1987). The Ninth Circuit reasoned that "if the claim may be litigated without reference to the rights and duties established in the CBA . . . it is not preempted." *Cramer v. Consol. Freightways, Inc.,* 255 F.3d 683, 691 (9th Cir. 2001). In this case, Plaintiffs' claims do not substantially depend upon the CBA because they are not based on any rights or duties

5—OPINION AND ORDER

established in the CBAs. Plaintiffs bring independent, stand-alone claims against Defendants under a state law forbidding employment discrimination. That law's prohibitions against discrimination exist independent of union contracts.

Defendants point to the fact that Plaintiffs' CBAs contain content regarding discrimination, health insurance, work assignments, and medical leave. (Nancarrow Decl. [3] at 2). However, Plaintiffs' claims in this case do not substantially depend upon the clauses alluded to in Defendants' briefing.

Mr. Hall's CBA contains a clause which governs the determination of health insurance benefits. (Nancarrow Decl. [3], Ex. 1 at 17). This clause details the mechanisms and conditions for health insurance coverage under the CBA. However, it does not address improper or discriminatory threats of benefit termination by the employer. Mr. Hall has not alleged that the actual terms of that contract were violated, nor that its procedures were not followed, but rather that the benefits outlined therein were improperly used to coerce him into retiring. Simply put, if Mr. Hall's claim goes to trial, the meaning of those contractual terms will not be in dispute. A separate issue, however, is whether his decision to retire was the result of discriminatory threats made by DTNA. Therefore, Mr. Hall's claims do not substantially depend upon his CBA.

Mr. Pierce's and Mr. Johnson's CBAs contain clauses relating to job duties, discrimination, and seniority determinations. (Nancarrow Decl. [3], Ex. 2 at 7). These clauses are not, however, implicated by Plaintiffs' action for a discriminatory work environment, since the question of whether DTNA's conduct was discriminatory does not depend upon their meaning.

For example, Mr. Pierce's CBA does detail a process for employee transfers (Nancarrow Decl. [3], Ex. 2 at 8), but the question of whether that process was followed is not implicated by Mr. Pierce's claim, nor DTNA's own argumentation. Mr. Pierce says that DTNA's HR

6—OPINION AND ORDER

department told him that his papers had been "lost" when he applied for a transfer, and HR only

"found" the papers after he produced a copy from his own records. (Aldisert Decl. [2] at 7). This

is simply a further allegation of the racially discriminatory behavior that Mr. Pierce is alleging in

this action. If Mr. Pierce's claim proceeds to trial, the meaning of the transfer policy within his

CBA will not be in controversy since that policy's procedures are not actually at issue here.

Likewise for Mr. Johnson, work assignments and seniority determinations are addressed

in his CBA. (Nancarrow Decl. [3], Ex. 3 at 2). This, however, does not mean that Mr. Johnson's

allegations substantially depend on those terms. Mr. Johnson is not claiming that DTNA did not

follow the work-assignment mechanisms or procedures in his CBA, nor that his contract was

violated. And if Mr. Johnson's discrimination claim does proceed to trial, the meanings of the

CBA clauses governing work assignments will not be in controversy.

Although the CBAs may be useful for a fact-finder to understand what type of conduct is

contractually permitted (or required) by the parties, a violation of a CBA is neither a necessary

nor sufficient element of a state-law discrimination claim. According to *Cramer*, 255 F.3d at

691, the Ninth Circuit reasons that "the need to interpret the CBA must inhere in the nature of

the plaintiff's claim." The CBAs do not inhere in the nature of Plaintiffs' claims in this case, and

therefore they need not be interpreted. Furthermore, the Ninth Circuit held that a defendant's

insistence on litigating a state-law claim through the framework of a CBA does not itself trigger

the LMRA. *Cramer*, 255 F.3d at 691 (noting that "[i]f the claim is plainly based on state law, §

301 preemption is not mandated simply because the defendant refers to the CBA in mounting a

defense.")

This conclusion is bolstered by a distinction provided by the Ninth Circuit. In *Balcorta,* 208

F.3d at 1108, that court drew a distinction between "interpretation" and "reference" of a CBA for

7—OPINION AND ORDER

purposes of the LMRA. For independent claims, such as this one, the Court stated that a CBA may be referenced, but it need not be interpreted or relied upon as a legal basis which would implicate the LMRA.

Defendants cite multiple cases from various jurisdictions (none from the Ninth Circuit) which have held that actions flowing from contractual mechanisms, such as employment decisions based on seniority determination, do in fact require interpretation of CBA terms to determine "to what extent those rights were recognized." *Casey v. Lifespan Corp.*, 62 F.Supp. 2d 471, 478 (D.R.I. 1999). Defendants urge the Court to adopt the rare reasoning of the Southern District of New York from *Morrissey v. Verizon Comm. Inc.,* No. 10 Civ. 6115(PGG), 2011 WL 2671742, at *4 (S.D.N.Y. July 7, 2011), which held that state law claims concerning the application of a CBA did substantially rely upon the CBA's interpretation. (Def.'s Resp. to Pl.'s Mot. to Remand [14] at 10). Based on relevant precedent from the Ninth Circuit, this Court cannot oblige them. In *Associated Builders & Contractors, Inc. v. Local 302 IBEW,* 109 F.3d 1353, 1357 (9th Cir. 1997), the Ninth Circuit reasoned that "§ 301 . . . should be applied only to state law purporting to determine questions relating to what the parties . . . agreed, and what legal consequences were intended to flow from breaches of that agreement." (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) (internal quotations omitted)). Under the Ninth Circuit's approach, Plaintiffs' claims in this case implicate neither the matters which the parties agreed to nor the consequences intended to flow from breach.

For the reasons discussed above, Plaintiffs' claims do not implicate the CBAs and therefore the LMRA does not create a federal question for this action.

II.     **Mr. Hall's Health Insurance Allegation is Preempted by the Employee Retirement Income Security Act.**

Defendants argue that Mr. Hall's allegation that the Defendants improperly threatened to terminate his health insurance should be preempted by ERISA (29 U.S.C. § 1132(b)), which defines health insurance benefits as an "employee welfare benefit plan." After *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), a two step approach has emerged to determine if a state-law action falls within the scope of ERISA (29 U.S.C. § 1132). A state law claim is completely preempted by ERISA if (1) an individual could have brought the claim under 29 U.S.C. § 1132, and (2) there is no other independent legal duty that is implicated by a defendant's actions. *Davila,* 542 U.S. at 210.

Defendants contend that Mr. Hall could have brought a claim for violation of ERISA § 502 (29 U.S.C. § 1132)[1] which prohibits discrimination against beneficiaries or interference with the rights of beneficiaries. (Def.'s Resp. to Pl.'s Mot. to Remand [14] at 22). Plaintiffs, however, argue that since Mr. Hall's benefits were not lost, invocation of ERISA is unnecessary. (Pl.'s Reply on Mot. to Remand [16] at 12). Therefore, the first *Davila* factor turns on whether an employer's alleged threat "interferes" with the rights guaranteed under ERISA. It is my opinion that it does. ERISA § 510 (29 U.S.C. § 1140) is intended to "prevent persons and entities from taking actions which might cut off or interfere with a participant's ability to collect present or future benefits or which punish a participant for exercising his or her rights under an employee benefit plan." *Lessard v. Applied Risk Mgmt.*, 307 F.3d 1020, 1024 (9th Cir. 2002) (citation omitted) (internal quotations omitted). Under the broad protection outlined in *Lessard*, the

---

[1] The prohibitions of ERISA 29 U.S.C § 1140 apply with equal weight to 29 U.S.C § 1132: "The provisions of section 502 [29 USCS § 1132] shall be applicable in the enforcement of this section." 29 U.S.C. § 1140.

9—OPINION AND ORDER

alleged threat in this case implicates a specific interest at issue under ERISA, namely

"interfere[nce] with . . . future benefits." *Id.*  The first *Davila* factor is therefore satisfied.

The second factor is also satisfied because the obligation for employers to provide health

insurance benefits does not exist independently of ERISA. Without ERISA, DTNA would be

under no obligation to provide insurance to its employees, and as such, Mr. Hall's current action

does not involve an entirely independent legal duty. Therefore, ERISA does in fact preempt Mr.

Hall's action against Defendants for threatening to terminate his health insurance unless he

retired. This creates a federal question and places subject matter jurisdiction in this Court. This

finding is consistent with the Supreme Court's holding in *Ingersoll-Rand Co. v. McClendon*, 498

U.S. 133, 144 (1990): "Congress intended § 502(a) [29 U.S.C. § 1132(a)] to be the exclusive

remedy for granting rights guaranteed under ERISA, including those provided by §510 [29

U.S.C. § 1140]."

### III.     Supplemental Jurisdiction is Appropriate for Mr. Hall's state-law claim, but it is Inappropriate for the Rest of the Plaintiffs.

Defendants argue that to the extent this Court lacks original jurisdiction over any

remaining state law claims, it should exercise supplemental jurisdiction over those claims.

Regarding the state law claims against the Defendants, this Court has the power to hear

supplemental claims "that form part of the same case or controversy under Article III." 28 U.S.C.

§ 1367(a). That jurisdiction includes "the entire case" where federal and state law claims are

asserted. 28 U.S.C. § 1441(c).

District courts have discretion whether or not to exercise supplemental jurisdiction over

claims they would otherwise lack jurisdiction to hear. The Ninth Circuit adopts a relatively less

discretionary stance toward supplemental claims, holding that *only* the four circumstances

outlined in § 1367(c)(1)–(4) can compel a District Court to refuse supplemental jurisdiction of a

10—OPINION AND ORDER

state law claim. *Exec. Software N. Am. Inc. v. U.S. Dist. Court,* 24 F.3d 1545, 1556 (9th Cir.

1994) *abrogated on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.,* 533 F.3d 1087,

1091(9th Cir. 2008). The four circumstances are:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction,
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). For purposes of this case, only the second circumstance is relevant. The

first circumstance does not apply; none of the remaining state law claims raise novel or complex

issues of state law. The third circumstance does not apply because this Court has original

jurisdiction over Plaintiff Hall's insurance claim under ERISA. Finally, the Plaintiffs have not

identified any exceptional circumstance suggesting that the fourth circumstance applies.

With regards to the second circumstance, this appears to be a case where there are many

claims that predominate over the one claim which this Court has jurisdiction over. Only Mr.

Hall's individual insurance benefit based claim is preempted by federal law. This Court lacks

original jurisdiction over every other claim brought by every other Plaintiff.

In exercising discretion over supplemental jurisdiction, the Ninth Circuit held that the district

court's discretion "is informed by whether remanding the pendent state claims comports with the

underlying objective of most sensibly accommodating the values of economy, convenience,

fairness, and comity." *Executive Software,* 24 F.3d at 1557 (internal citations omitted) (internal

quotations omitted). Here, the interest of judicial economy is at stake. Given the similarity of the

claims and factual allegations brought by the Plaintiffs, it would likely be more efficient for all

of Plaintiffs' claims to be adjudicated in a single proceeding, in a single court. However, that

interest is outweighed by the value of fairness in allowing Plaintiffs Johnson, Pierce, and Harris

11—OPINION AND ORDER

to be the masters of their claims and have those claims adjudicated in the forum of their

choosing. Therefore, because this Court has original jurisdiction over one of Mr. Hall's claims,

supplemental jurisdiction is appropriate for his state-law claim of aiding and abetting race

discrimination. However, Mr. Johnson, Mr. Pierce and Ms. Harris's action should be remanded

to state court since there is no basis for their claims to be heard in this Court. Their interest in

forum selection for their state-law claim outweighs the interest of judicial economy in forcing

those claims to be heard in federal court through the exercise of supplemental jurisdiction over

their co-Plaintiff.

## IV.    An Award of Attorney Fees and Costs is not Appropriate.

An award of attorney fees is not appropriate based on 28 U.S.C § 1447(c). Such an award is

fitting when the removing party lacked an "objectively reasonable basis for seeking removal." In

this action, the removing party (Defendants) sought removal based on a partially valid rationale,

as discussed above. Therefore, an attorney fee award is not warranted.

## CONCLUSION

Mr. Hall's claim against Defendants is preempted by ERISA, which properly places

subject-matter jurisdiction for his action in this Court. Plaintiffs Johnson, Pierce, and Harris'

claims do not implicate a federal statute, and this Court lacks original jurisdiction. Plaintiffs'

motion to remand to state court is hereby DENIED with respect to Mr. Hall's federal and state-

law claims, and GRANTED for Plaintiffs Johnson, Pierce, and Harris' claims.

IT IS SO ORDERED
DATED this __20__ day of July, 2015.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

12—OPINION AND ORDER